UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBRADO SOLANO, JR., | ) Case No.: 1:14-cv-00633-BAM (PC) |
| Plaintiff, | ) SCREENING ORDER DISMISSING COMPLAINT |
| v. | ) AND GRANTING LEAVE TO AMEND |
| | ) (ECF No. 1) |
| PEREZ, et al., | ) |
| Defendants. | ) THIRTY-DAY DEADLINE |
| | ) |

**I.     Screening Requirement and Standard**

Plaintiff Librado Solano, Jr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on April 9, 2014. (ECF No. 1.) The matter was transferred to this Court on April 29, 2014. (ECF No. 7.) Plaintiff's complaint, filed on April 16, 2014, is currently before the Court for screening.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at High Desert State Prison in Susanville, California. The events in the complaint are alleged to have occurred at Folsom State Prison and the California Correctional Institution in April and May 2013. Plaintiff names the following defendants: (1) Doe Defendant #1; (2) Doe Defendant #2; (3) Correctional Officer Perez; (4) Correctional Officer Peterson; (5) Correctional Officer Alexander; (6) Correctional Officer Baltran; (7) Correctional Officer George; (8) Dr. Eslami Afshin; (9) Dr. Harold Tate; and (10) Dr. Yin Allan J.

Plaintiff alleges: On April 24, 2013, Doe Defendants #1 and #2 transported Plaintiff from Folsom State Prison to Methodist Hospital for right side inguinal hernia surgery. After waking up from anesthesia and surgery, a nurse stated that the surgeon also repaired the left side, which Plaintiff never had any problems with and was not documented on any medical records. Instead of remaining in the hospital for recuperation, Plaintiff was immediately returned to Folsom State Prison. Upon arrival, Doe Defendants #1 and #2 should have taken Plaintiff to the TTA medical clinic for

examination and pain medication, but they placed Plaintiff in a single-man holding cage for Ad-Seg officers to escort Plaintiff to his cell.  While in the cage for a long period of time, Plaintiff's pain medication began wearing off.

Defendants Perez and Peterson, Ad-Seg officers, arrived at the holding cage.  Defendant Perez told Plaintiff to stand up and turn around so that he could place waist chains and handcuffs on the Plaintiff.  Plaintiff complied.  The waist chains were put on so tightly that Plaintiff asked for them to be loosened.  Defendant Perez ignored Plaintiff and told Plaintiff to back out of the holding cage.  As Plaintiff did so, he asked for a wheelchair.  Defendant Peterson looked around the area and said there was not one around and they were walking Plaintiff to his housing unit.  Plaintiff stated that he needed a wheelchair and he was in no condition to walk because he had just had surgery.  Defendants Perez and Peterson told Plaintiff that he had no choice and forced him to walk.  After 30 yards, Plaintiff came to some stairs.  Plaintiff told the officers that he was hurting and could not proceed.  Defendant Perez told Plaintiff that he would help him and gave him a light push.  Once Plaintiff reached the bottom of the stairs, he was shaking in agony.  Plaintiff was forced to walk another 20 to 30 yards to the Ad-Seg unit, where Plaintiff was forced to walk 3 tiers of stairs.  Defendants Perez and Peterson left Plaintiff in his cell in severe pain.

After three to five hours in his cell, Nurse Hernandez was walking by and handing out medication.  Plaintiff's cellmate yelled for Nurse Hernandez and asked to speak with him concerning Plaintiff.  Plaintiff told Nurse Hernandez that he was in pain, he had surgery early that morning and he had not received any pain medication for recovery.  Nurse Hernandez looked in his medication box to see if there was any medication for Plaintiff.  Nurse Hernandez stated that there was nothing for the Plaintiff and that Plaintiff should put in a medical request to see the doctor.

From 8:30 to 9:00 p.m., there was a shift change.  Officer Perez was passing by Plaintiff's cell.  Plaintiff was in severe pain and yelled for Officer Perez.  When Officer Perez came to the cell window, Plaintiff explained that he was in pain and needed his pain medication.  Officer Perez told Plaintiff to cuff-up so that he could escort him to Ad-Seg medical.  On Plaintiff's arrival, Nurse Hernandez asked Plaintiff how he was doing and stated he was trying to reach a doctor.  At that point, Officers Alexander and Baltran walked into the medical clinic.  Officer Alexander said, "Not this guy

3

again! There's always something wrong with this guy! And a needy person." (ECF No. 4, p. 9.) Officer Alexander was harassing Plaintiff. Officer Baltran interrupted Officer Alexander and asked Plaintiff why he had to go "man down" on their shift. Officer Alexander said that there was no doctor around and they could not do anything. Nurse Hernandez told the officers to stop, that Plaintiff was in medical need, his medical file was lost, Folsom TTA medical clinic did not know he went out for surgery and that is why he wasn't given any pain medication. Plaintiff alleges that Defendant Doe #1 and Defendant Doe #2 failed to process his medical paperwork. Plaintiff was escorted back to his cell for recovery.

On April 25, 2013, Officer George came to Plaintiff's cell for a committee meeting with Warden RM Hill. Plaintiff told Officer George that he had just gotten out of surgery and needed to recover. Officer George told Plaintiff that he did not have a choice. Plaintiff got dressed and was escorted to the committee meeting, but the Warden and the committee were not ready for Plaintiff. Officer George had Plaintiff face the wall and stand for approximately 20 to 30 minutes even though Plaintiff began to shiver due the pain. Officer George ignored Plaintiff. Officers Hahn and Freyance saw that Plaintiff was shivering and asked if he was okay. Plaintiff told them that he had surgery the prior morning, wasn't feeling well and went man-down the night before. Office Hahn told Officer George that Plaintiff should be sitting down, but the door opened for the committee meeting. After the meeting was over, Plaintiff thought that he would be returning to his cell to recover. However, Officer George told Plaintiff that he had another appointment to attend to at the TTA medical clinic, which was 80 to 100 yards of walking. Plaintiff told Officer George that he was not feeling well and could not walk that far. Officer George grabbed Plaintiff's waist chains and forced him to walk down three tiers of stairs. Plaintiff began shivering twice as much. Escort Officer Jones arrived and Officer George left. Officer Jones asked Plaintiff if he was okay. Plaintiff said that he was in a lot of pain and was not able to walk to the TTA medical clinic. Plaintiff requested a wheelchair. Officer Jones said there was no wheelchair around, but that he would call the clinic and tell them that Plaintiff was in no condition to walk that far. A doctor arrived and examined Plaintiff. Plaintiff was then taken to his cell so that he could recover.

A week after the surgery, Plaintiff noticed a swollen bump on the left side of his groin area. He also was experiencing intestinal pain and right-side testicle discomfort. Plaintiff submitted an emergency health care request. A few days later, Plaintiff yelled for Nurse Hernandez and Officer Harris, who were walking by the cell. Nurse Hernandez told Plaintiff to submit another health care request slip.

On May 5, 2013, Plaintiff submitted an emergency 602 appeal because of the lump on his left side groin area. On May 6, 2013, Plaintiff was called to medical. As Plaintiff was being examined by a nurse and Dr. Reddy, he told them about his kidney pains and the bump on the left side groin area. Dr. Reddy thought it could be another hernia and indicated that he would call Plaintiff's surgeon. Plaintiff was escorted back to his cell. About an hour later, escort officers came to Plaintiff's cell door and told him he was leaving the prison to see his surgeon. Dr. Eslami Afshin examined Plaintiff and said nothing was wrong with him. Plaintiff explained to Dr. Afshin that his ride side hernia was fine, but a left side hernia occurred. Plaintiff asked for a proper examination, but Dr. Afshin said there was nothing wrong and left. Plaintiff was then transported back to Folsom Prison.

Plaintiff continued to have severe pains and requested health care services. On May 13, 2013, Plaintiff was examined by nurse, who said Plaintiff had a left side hernia. On May 20, 2013, Dr. Reddy also said Plaintiff had a left side hernia and requested a referral for left side hernia repair surgery. On May 22, 2013, Plaintiff wrote to the Prison Law Office for help getting surgery because he received a response to his 602 appeal stating that his health care hernia injury did not meet the criteria for emergency surgery.

On June 11, 2013, Plaintiff was transferred to the California Correctional Institution. Upon his arrival, Plaintiff notified the medical staff about his left side hernia and testicle pain. Medical staff informed Plaintiff that he would be seen in the medical clinic in a couple of days. Plaintiff filled out a medical request to see the medical clinic.

On June 13, 2013, Plaintiff was taken to the medical clinic and explained his hernia injury and pain. The nurse informed plaintiff that he would receive pain medication that evening, but he did not receive any. Plaintiff submitted another medical request to staff for pain medication.

1     On June 19, 2013, the Prison Law Office responded to Plaintiff's letter regarding his request
2  for help with surgery. Plaintiff was informed that surgery had been approved.
3     On June 24, 2013, a nurse informed Plaintiff that he would not be given pain medication until
4  he had seen a doctor.
5     On June 27, 2013, Plaintiff was called for a medical evaluation with Dr. Thomas Bingamon.
6  Dr. Bingamon told Plaintiff that a referral request for left side hernia repair surgery was submitted by
7  Dr. Reddy and the surgery was approved. Dr. Bingamon said that the surgery would still take place
8  even thought he had been transferred. Plaintiff asked Dr. Bingamon for a change of pain medication
9  because his medication was no longer helping. Dr. Bingamon did not change the pain medication.
10 While waiting for another appointment to see a surgeon, Plaintiff submitted a 602 appeal for change of
11 pain medication on June 30, 2013.
12    On July 2, 2013, Plaintiff had an appointment with a surgeon who indicated that he would do
13 the surgery in a month or two.
14    On July 9, 2013, Plaintiff was interviewed by Dr. Tate regarding the 602 appeal for pain
15 medication. Dr. Tate denied Plaintiff's request for a medication change. Dr. Tate did not examine
16 Plaintiff for his hernia condition.
17    After four months, Plaintiff's surgery had not taken place. On October 4, 2013, Plaintiff
18 submitted a medical request regarding his hernia and testicle pains. On October 21, 2013, Plaintiff
19 saw Dr. Tate. Dr. Tate accused plaintiff of abusing his pain medication. Dr. Tate did not allow
20 Plaintiff to discuss his medical condition and did not examine Plaintiff. Plaintiff filed a 602 appeal
21 regarding Dr. Tate's misconduct.
22    After six months, Plaintiff had still not had surgery to repair his hernia. Plaintiff then wrote a
23 letter to the Office of the Ombudsman to get help. On September 9, 2013, Plaintiff received a
24 response from the Ombudsman stating that they could not help with Plaintiff's medical issues.
25    After another month had passed, Plaintiff again wrote to the Prison Law Office asking for help
26 with his surgery. On December 9, 2013, the Prison Law Office notified him that surgery was
27 rescheduled and the delay appeared to have been a clerical error due to the transfer. Plaintiff alleges
28 that this was a lie.

1     On December 6, 2013, Plaintiff underwent surgery for his left side inguinal hernia repair.
2 Plaintiff was discharged the same day from San Joaquin Community Hospital and transported back to
3 the California Correctional Institution.

4     On December 14, 2013, Plaintiff had a sneeze attack and his incision site begin giving him bad
5 pains. The incision site began to swell. After four hours, Plaintiff's cellmate yelled for help. Plaintiff
6 was escorted to the TTA medical clinic for examination. Medical staff paged a doctor in the
7 institution. Dr. Yin, Allan J. arrived and told Plaintiff that his mesh likely fell apart and he was
8 bleeding inside. Plaintiff asked to be sent to the hospital. Dr. Yin Allan J said he would give Plaintiff
9 2 Tylenol for pain and send him back to his cell to rest. Dr. Yin Allan J said he would check on
10 Plaintiff later, but he did not. About 5 hours later, Plaintiff woke up on December 15, 2013, and his
11 sheets and groin area were covered in blood. Plaintiff woke his cellmate and told him he was bleeding
12 from his groin area. Plaintiff's cellmate yelled "man down" because Plaintiff was bleeding. The
13 officers arrived and called for TTA medical staff. Plaintiff was taken back to the TTA medical clinic
14 and continued bleeding out of his incision site. TTA called for an ambulance.

15     On December 17, 2013, Plaintiff returned from the hospital. On December 18, 2013, Officers
16 Juarez and Hutto came to Plaintiff's cell to take him to an appointment with Dr. Tate. Plaintiff told
17 the officers that he could not walk and needed a wheelchair to get to his doctor's appointment. The
18 officers said that they would let Dr. Tate know and come back to get him. Officer Hutto and Dr. Tate
19 forged a medical document for refusal of examination and/or treatment.

20     On December 19, 2013, two officers came to Plaintiff's cell to escort him to the medical clinic.
21 Dr. Tate told Plaintiff that the only way his incision site could have opened was if Plaintiff had opened
22 it himself. Dr. Tate checked the incision and the appointment ended. Plaintiff asked the officers for a
23 wheelchair to return to his cell, but Dr. Tate told Plaintiff that he could walk.

24     Plaintiff seeks declaratory relief, along with compensatory and punitive damages.

25 **III.    Discussion**
26     **A. Federal Rule of Civil Procedure 18**
27     Federal Rule of Civil Procedure 18 states that "[a] party asserting a claim, counterclaim,
28 crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it

7

has against an opposing party." Fed. R. Civ. P. 18(a). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)).

Here, Plaintiff attempts to bring suit against multiple defendants for different incidents at different times and different institutions. For example, Plaintiff complains about the actions of transfer officers at Folsom State Prison while simultaneously complaining about the denial of pain medication by Dr. Tate at California Correctional Institution. If Plaintiff chooses to file an amended complaint and it fails to comply with Rule 18(a), all unrelated claims will be subject to dismissal.

### B. Deliberate Indifference to Serious Medical Needs

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). "Deliberate indifference is a high legal standard." Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

///

Doe Defendants #1 and 2

At the pleading stage, Plaintiff has stated a cognizable claim for deliberate indifference to serious medical needs against Doe Defendants #1 and #2. However, Plaintiff is advised that generally "the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir.1980). Plaintiff is informed that Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for the Does.

Defendants Perez and Peterson

Plaintiff has not stated a claim for deliberate indifference to serious medical needs against Defendants Perez and Peterson. At best, Plaintiff has alleged that Defendants Perez and Peterson forced him to walk to his cell after surgery on one occasion. An isolated occurrence of neglect does not state a claim for deliberate indifference to serious medical needs. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Defendants Alexander and Baltran

Plaintiff has not stated a claim for deliberate indifference to serious medical needs against Defendants Alexander and Baltran. At best, Plaintiff has alleged that these officers complained about Plaintiff, but there is no indication that they were deliberately indifferent to serious medical need. Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987).

Defendant George

Plaintiff has not stated a claim for deliberate indifference to serious medical needs against Defendant George. At best, Plaintiff has alleged that Defendant George forced him to walk to and from a committee meeting without the use of a wheelchair. There is no indication that Defendant George disregarded a serious risk of harm to Plaintiff.

Defendant Eslami Afshin

Plaintiff has failed to allege a claim for deliberate indifference to serious medical needs against Defendant Afshin. Plaintiff admits that Defendant Afshin examined him, but failed to diagnose any hernia on May 3, 2013.

9

1  "[A] complaint that a physician has been negligent in diagnosing or treating a medical
2  condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical
3  malpractice does not become a constitutional violation merely because the victim is a prisoner."
4  Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995).
5  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See
6  Wood, 900 F.2d at 1334.

7  Further, it appears that Defendant Afshin may be a private party.  Plaintiff cannot state a
8  section 1983 claim against Defendant Afshin because he is not a state actor.  See Price v. Hawaii, 939
9  F.2d 702, 707-08 (9th Cir. 1991) (private parties generally not acting under color of state law).
10 However, private parties may be acting under color of law if they conspire with state officials to
11 deprive another of federal rights or by engaging in joint activity with state officials.  Id. at 708; Tower
12 v. Glover, 467 U.S. 914, 920, 104 S.Ct. 2820, 2824 (1984).  Plaintiff does not allege that Defendant
13 Afshin was conspiring with state officials or engaging in joint activity with state officials.

14 Defendants Tate and Yin Allan J.
15 At the pleading stage, Plaintiff has stated a cognizable deliberate indifference claim against
16 Defendants Tate and Yin Allan J.  However, as noted above, Plaintiff's complaint does not comply
17 with Federal Rule of Civil Procedure 18.  Accordingly, Plaintiff cannot pursue his claims against
18 Defendants Tate and Yin Allan J. in the same lawsuit as they arise out of different transactions and
19 occurrences.  Additionally, Plaintiff cannot combine these claims against any claims that he may have
20 against prison officials at Folsom State Prison.

21 **C.  Declaratory Relief**
22 Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other
23 forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the
24 public interest."  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92
25 L.Ed. 784 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in
26 clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from
27 the uncertainty and controversy faced by the parties."  United States v. Washington, 759 F.2d 1353,
28 1357 (9th Cir.1985).  In the event that this action reaches trial and the jury returns a verdict in favor of

Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that a defendant violated Plaintiff's rights is unnecessary.

### IV. Conclusion and Order

Although Plaintiff's complaint states cognizable claims for relief, Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 18.  The Court will grant Plaintiff an opportunity to amend his complaint and cure the identified deficiencies, including selecting those claims he wishes to pursue in this action.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint.  George, 507 F.3d at 607 (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa County, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed with leave to amend;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and
4. If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **April 7, 2015**          /s/ *Barbara A. McAuliffe*
                                               UNITED STATES MAGISTRATE JUDGE